[743 NYS2d 599]

GERMANTOWN CENTRAL SCHOOL DISTRICT, Respondent, v CLARK, CLARK, MILLIS & GILSON, AIA, et al., Defendants, and KEVAN R. JONES et al., Appellants.

Third Department, June 6, 2002

APPEARANCES OF COUNSEL

*Sternberg & Gorman L.L.P.,* Hoosick Falls (*Edward J. Gorman* of counsel), for Kevan R. Jones, appellant.

*Harter, Secrest & Emery L.L.P.,* Rochester (*James C. Moore* of counsel), for Robert T. Clark and another, appellants.

*Lewis & Greer P.C.,* Poughkeepsie (*Gunter Dully,* Albany, of counsel), for respondent.

## OPINION OF THE COURT

SPAIN, J.

In 1985, plaintiff contracted with defendant Clark, Clark, Millis & Gilson, AIA (hereinafter CCM&G), an architectural firm, for architectural and engineering services in connection with an asbestos abatement project for a building owned by plaintiff. CCM&G thereafter retained defendant Robson & Woese Inc. (hereinafter Robson), a firm of engineers, as a consultant or subcontractor on the project. In December 1986, CCM&G and Robson apparently separately certified[1] that all asbestos designated for removal in the contract had been abated and that there was no asbestos in those areas of the building. All of the work on the project was completed by late 1986 or early 1987.

Approximately 13 years later, in late 1999 or January 2000, contractors and consultants retained by plaintiff for a construction project on the same building advised plaintiff that asbestos had been discovered in areas of the building previously certified by defendants as asbestos-free. Plaintiff's investigation confirmed the presence of asbestos in those areas, which plaintiff has now partially abated. In October 2000, plaintiff commenced this malpractice action against CCM&G and its individual partners, defendants Robert T. Clark, Kevan R. Jones and Harold R. Millis, and against Robson, seeking to recover for the damage to its property due to the presence of asbestos in the building and its abatement costs. After joinder of issue, CCM&G, Jones and Robson moved for summary judgment on

---

1. Neither the certifications nor CCM&G's subcontract with Robson are included in the record on appeal.

the ground that the action was barred by the three-year statute of limitations provided by CPLR 214 (6). Plaintiff opposed said motion and cross-moved for leave to serve an amended complaint to add causes of action for indemnification and restitution.

Supreme Court denied defendants' motion for summary judgment concluding that the toxic tort discovery rule of CPLR 214-c (2) applied, that plaintiff discovered the asbestos in the building in 1999 and thereafter timely commenced this action. Further, the court granted plaintiff's cross motion to amend its complaint. Robson, Clark and Jones appeal, arguing that plaintiff's action is untimely under CPLR 214 (6) and that the discovery rule of CPLR 214-c is inapplicable, and they contend that plaintiff's cross motion to amend its complaint should have been denied as the proposed causes of action lack merit.

The novel question presented in this appeal is whether this state's remedial date of discovery statute of limitations for certain toxic torts—CPLR 214-c—applies to the type of injury to its property which plaintiff claims, namely, the presence of asbestos in a building due to defendants' negligent abatement services which plaintiff discovers at a later date and requires removal. In *MRI Broadway Rental v United States Min. Prods. Co.* (92 NY2d 421), involving the installation during construction of asbestos-containing fireproofing material, the Court of Appeals left open the question of whether CPLR 214-c applies to these types of claims related to the presence of asbestos in a building and the need to abate it (*id.* at 429; *see, 888 7th Ave. Assoc. Ltd. Partnership v AAER Sprayed Insulations*, 199 AD2d 50, 51, *lv dismissed and denied* 84 NY2d 841 [clarified by *City of New York v Lead Indus. Assn.*, 222 AD2d 119, 127]; *First Bible Baptist Church v Gates-Chili Cent. School Dist.*, 172 AD2d 1057). We find that the statutory words, the legislative history and purpose behind the statute and existing case law support the conclusion that CPLR 214-c is not applicable to this action and that plaintiff's action was untimely under CPLR 214, entitling defendants to summary judgment dismissing plaintiff's complaint.

CPLR 214-c was enacted in 1986 to ameliorate the effect of a line of Court of Appeals' decisions holding that toxic tort claims accrue upon the impact or exposure to the substance, even though the resulting illness or injury may not be manifested and discovered for a long time thereafter (*see, Matter of New York County DES Litig.*, 89 NY2d 506, 513, citing Sponsor's Mem supporting L 1986, ch 682, 1986 NY Legis Ann, at 287;

*Jensen v General Elec. Co.*, 82 NY2d 77, 83-85; *see also, Blanco v American Tel. & Tel. Co.*, 90 NY2d 757, 766; 16 Kreindler, Rodriguez, Beekman & Cook, New York Law of Torts § 19.25 [West's NY Prac Series 1997]; *see, e.g., Snyder v Town Insulation*, 81 NY2d 429; *Matter of Steinhardt v Johns-Manville Corp.*, 54 NY2d 1008, *amended* 55 NY2d 802, *appeal dismissed and cert denied* 456 US 967). In pertinent part, this statute provides as follows:

> "the three year period within which an action to recover damages for personal injury or injury to property *caused by the latent effects of exposure to any substance* * * * upon or within the body or upon or within property must be commenced shall be computed from the *date of discovery* of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier" (CPLR 214-c [2] [emphases supplied]).

By its terms, CPLR 214-c (2) applies to actions for damages for "injury to property," but this is qualified by the requirement that the injuries were "caused by the *latent effects* of exposure" to the toxic substance (emphasis supplied). The injury to property of which plaintiff complains is the presence of the asbestos in its building—after defendants had certified that the asbestos had been abated and that the designated area was free of asbestos—and the need to abate it, injuries which occurred when the asbestos was left in the building (*see, MRI Broadway Rental v United States Min. Prods. Co.*, 92 NY2d 421, 424, 428, *supra* [injury to property occurred when asbestos-containing material was installed]; *see also, Maryland Cas. Co. v W.R. Grace & Co.*, 23 F3d 617, 627 [2d Cir], *cert denied* 513 US 1052). However, assuming arguendo that "exposure" under this statute, broadly defined, includes errantly leaving asbestos in a building during an abatement project, i.e., "expos[ing]" the building to asbestos (CPLR 214-c [1] [defining "exposure" as "direct or indirect exposure by absorption, contact, ingestion, inhalation, implantation or injection"]), the injuries to plaintiff's property here were *not* "caused by the *latent effects* of exposure" to asbestos within the intendment of this statute. Rather, the injury or damage to plaintiff's property occurred and was complete when the asbestos was negligently left in the building, which immediately triggered the need to remove it, and no further or additional damage to the building (or to individuals) is alleged (*see, Maryland Cas. Co. v W.R. Grace &*

*Co., supra* at 628; *MRI Broadway Rental v United States Min. Prods. Co., supra* at 427-428).

Thus, for purposes of the applicability of CPLR 214-c (2), injury to property due to installing or inadequately abating asbestos is distinguishable from property damage resulting from the gradual contamination of the land or groundwater due to leaking land fills or chemical/petroleum tanks—the latter being "analogous to the slow progression of diseases such as asbestosis and cancer"—which involve "latent" or insidious effects of exposure to toxic substances, i.e., effects which later manifest themselves after injury or damage has gradually occurred (*Maryland Cas. Co. v W.R. Grace & Co., supra* at 627-628; *cf., Rothstein v Tennessee Gas Pipeline Co.*, 87 NY2d 90; *Scheidel v A.C. & S.*, 258 AD2d 751, *lv denied* 93 NY2d 809; *Christy v Harvey*, 262 AD2d 755; *Boswell v Leemilt's Petroleum*, 252 AD2d 889; *Oliver Chevrolet v Mobil Oil Corp.*, 249 AD2d 793). In this respect, importantly, CPLR 214-c does not apply to *all* claims involving toxic substances which are discovered in a building at a later date but, instead, is expressly limited to injuries caused by *"latent effects* of exposure" to the toxins (emphasis supplied).

While plaintiff did not discover that asbestos was present in the previously abated area of the building until 1999 or 2000, the delayed discovery does not create a *latent effect* attributable to the asbestos. CPLR 214-c was enacted to correct the injustice created by the old rule which failed to recognize that the adverse effects, including resulting illnesses and property contamination, of many toxic substances do not *manifest themselves* until many years after the exposure takes place (*see, Matter of New York County DES Litig.*, 89 NY2d 506, 513, *supra*; *Jensen v General Elec. Co.*, 82 NY2d 77, 84, *supra*). Thus, CPLR 214-c, by legislative choice of qualifying language and intent, applies only where the adverse effects of exposure to a toxin do not manifest themselves for many years after the exposure, i.e., to injuries caused by *latent effects*, and not where, as here, "there is no interval between the alleged exposure and resulting harm" (*Dabb v NYNEX Corp.*, 262 AD2d 1079, 1079; *see, Sweeney v General Print.*, 210 AD2d 865, *lv denied* 85 NY2d 808; *see also, Matter of New York County DES Litig., supra* at 514).

Here, while the presence of asbestos was discovered approximately 13 years after the abatement project was purportedly completed, the property damage claimed was unchanged during that time; no adverse effects of the presence of asbestos

ever developed and no further damage or adverse effect to the building occurred thereafter. Endeavoring to interpret and apply this "statute in a way that makes sense in light of both the legislative design and the specific problem that the provision was adopted to remedy" (*Matter of New York County DES Litig.*, *supra* at 514), and to avoid "stretch[ing] [it] beyond its intended coverage" (*Blanco v American Tel. & Tel. Co.*, 90 NY2d 757, 766, *supra*), we conclude that the mere presence of asbestos in a building and the need and cost to abate it do not constitute injury to property caused by the latent effects of exposure to asbestos within the contemplation of CPLR 214-c (2).

Thus, applying the three-year statute of limitations contained in CPLR 214 (6) to plaintiff's claim for professional malpractice, which accrued at the latest in 1987 (*see, Brothers v Florence*, 95 NY2d 290; *MRI Broadway Rental v United States Min. Prods. Co.*, 92 NY2d 421, 424, 428, *supra*; *Ackerman v Price Waterhouse*, 84 NY2d 535, 541), against the architects and engineers (*see, Chase Scientific Research v NIA Group*, 96 NY2d 20), we find that plaintiff's action, commenced in 2000, was clearly untimely. Therefore, although certain of the defendants either did not move for summary judgment or appeal from the denial of the motion, this Court has searched the record and determined that all defendants herein are entitled to summary judgment dismissing plaintiff's complaint (*see, Falsitta v Metropolitan Life Ins. Co.*, 279 AD2d 879, 881).

Next, while leave to amend is generally freely given (*see,* CPLR 3025 [b]), we find that Supreme Court erred in granting plaintiff's cross motion to amend its complaint as plaintiff failed to demonstrate that the new causes of action have any merit (*see, Krouner v Travis*, 290 AD2d 917; *Godinez v Siena Coll.*, 288 AD2d 659, 661, *lv dismissed and denied* 97 NY2d 722). Plaintiff's proposed implied indemnification and restitution claims[2] are premised, in part, upon defendants' purported duty to third parties consisting of plaintiff's students and employ-

---

2. A cause of action for implied indemnification requires a showing that plaintiff and defendants owed a duty to third parties, and that plaintiff discharged the duty which, as between plaintiff and defendants, should have been discharged by defendants (*see, McDermott v City of New York*, 50 NY2d 211, 216-217; *City of New York v Lead Indus. Assn.*, 222 AD2d 119, 124-125, *supra*; Restatement of Restitution § 76). Plaintiff does not raise any claims for contractual indemnification. Plaintiff's restitution claim presupposes that plaintiff performed a duty owed by defendants to the third parties and did so out of immediate necessity for the public health and safety (*see, City of New York v Lead Indus. Assn., supra* at 125; Restatement of Restitution § 115; *see also, HANYS Servs. v Empire Blue Cross & Blue Shield*, 292 AD2d 61).

ees, which plaintiff claims it discharged by investigating and partially abating the asbestos that defendants had earlier incorrectly certified had been removed. However, plaintiff fails to provide any basis or authority upon which to impose such a duty on defendants to these third parties (*see, Waldorf Steel Fabricators v Trocom Constr. Co.*, 244 AD2d 479, 480; *Kemron Envtl. Servs. v Environmental Compliance*, 184 AD2d 755; *cf., State of New York v Stewart's Ice Cream Co.*, 64 NY2d 83, 86-88), where defendants did not manufacture the asbestos (*cf., McDermott v City of New York*, 50 NY2d 211; *City of New York v Lead Indus. Assn.*, 222 AD2d 119, *supra*; *State of New York v Schenectady Chems.*, 103 AD2d 33; *City of New York v Keene Corp.*, 132 Misc 2d 745, *affd* 129 AD2d 1019) but, rather—at most—allegedly negligently performed or misrepresented the abatement services for which plaintiff had contracted.

Moreover, plaintiff has not been held liable or cast in damages to these third parties (indeed, no injury to third parties is even alleged) and, thus, defendants' alleged breach of a duty to these *third parties* does not, as it must, form the basis for plaintiff's indemnification and restitution claims (*see, McDermott v City of New York, supra* at 217-218, 218 n 4). Instead, the actual premise of these claims is that defendants breached their contractual duty *to plaintiff* in negligently performing their professional services—the very duties underlying plaintiff's time-barred tort claims—which patently cannot support plaintiff's proposed equitable causes of action. Permitting plaintiffs to add these tort claims by recasting them in indemnification and restitution language would improperly circumvent the statute of limitations' bar on these claims (*see, City of New York v Lead Indus. Assn., supra* at 126-127; *see also, MRI Broadway Rental v United States Min. Prods. Co.*, 242 AD2d 440, 444-445, *affd* 92 NY2d 421). As such, plaintiff has failed to show that the proposed new causes of action have any legal or evidentiary merit and, thus, plaintiff's cross motion should have been denied (*see, Krouner v Travis*, 290 AD2d 917, *supra*; *Curtin v Community Health Plan*, 276 AD2d 884, 886).

CARDONA, P.J., MERCURE, PETERS and CARPINELLO, JJ., concur.

Ordered that the order is reversed, on the law, without costs, plaintiff's cross motion denied, defendants' motion granted,

summary judgment awarded to defendants and complaint dismissed.

# MEMORANDA

OF

*DECISIONS RENDERED DURING THIS PERIOD EMBRACED IN THIS VOLUME*