■ LAWRENCE M. LEVINE, Respondent, v HARRITON & FURRER, LLP, Sued Herein as HERRITON & FURRER, LLP, Appellant.
[940 NYS2d 334]—

Garry, J.

Plaintiff, a licensed professional engineer, was retained to provide services in connection with a personal injury claim in the Court of Claims against the State of New York arising from an alleged highway defect. The claim was subsequently transferred to defendant, a law firm in the Village of Round Lake, Saratoga County, and plaintiff was again retained. The parties initially proceeded upon an oral agreement. In February 2006, plaintiff submitted a written retainer agreement to defendant setting forth a retainer fee and establishing hourly charges and fees, among other things. Defendant paid the retainer fee and, on the claimant's behalf, returned the agreement to plaintiff, without signature. Plaintiff subsequently provided services and submitted bills periodically to defendant. Defendant made payments through December 2007, when the trial was completed; thereafter, defendant made no further payments but did request continuing services, which plaintiff provided. In May 2008, the Court of Claims rendered a determination dismissing the claim upon the ground that negligence had not been proven. Plaintiff allegedly continued to submit invoices for payment of the outstanding balance due through October 2008, but received no response. After plaintiff's counsel contacted defendant, defendant responded in writing in November 2008, refusing to pay and alleging that the unfavorable determination of the claim had resulted from plaintiff's professional malpractice.

Plaintiff thereafter commenced this action seeking to recover upon an account stated, breach of oral and written contracts, and unjust enrichment. Defendant joined issue and counterclaimed for professional malpractice, negligence and breach of contract. Following discovery, plaintiff moved for summary judgment and dismissal of the counterclaims, and defendant cross-moved for dismissal of plaintiff's claims and summary judgment on the counterclaims. Supreme Court, among other things, dismissed the counterclaims, granted that part of defendant's motion seeking dismissal of the claim for breach of written contract, and granted summary judgment in plaintiff's favor on the remaining causes of action. Defendant appeals, and we affirm.

Supreme Court correctly dismissed defendant's counterclaims for failure to state a cause of action. The counterclaims were premised upon the theory that defendant was an intended third-party beneficiary of the November 2006 retainer agreement, by which plaintiff was to provide engineering services on the claimant's behalf.[1] This theory required a showing that a valid contract existed, that it was intended to provide defendant with a benefit, and that the intended benefit was "sufficiently immediate, rather than incidental," to support the assumption that defendant would be entitled to compensation if the benefit was lost (*Boyd v Hall, Ltd.*, 307 AD2d 624, 626 [2003] [internal quotation marks and citations omitted]; *see Bonwell v Stone*, 128 AD2d 1013, 1014 [1987]). "[T]he best evidence of [such an intent] is to be found in the language of the contract itself" (*Binghamton Masonic Temple v City of Binghamton*, 213 AD2d 742, 746 [1995], *lv denied* 85 NY2d 811 [1995]; *see IMS Engrs.-Architects, P.C. v State of New York*, 51 AD3d 1355, 1357 [2008], *lv denied* 11 NY3d 706 [2008]). Assuming without deciding that the retainer agreement was a valid contract between plaintiff and the claimant, defendant points to no language therein, nor to any other facts indicating that the agreement was intended to furnish defendant with any benefit beyond that of the legal fees that might incidentally be gained upon an award in the claimant's favor. There is nothing to support the assumption of a duty to compensate defendant if these fees were not gained; to the contrary, the agreement expressly provided that the parties' obligations were "unrelated to the specific outcome or result with respect to the subject matter." Further, we agree with Supreme Court that any affirmative claim against plaintiff for

---

1. Supreme Court found that the 2006 retainer agreement did not constitute a written contract running directly between defendant and plaintiff, as it was not signed by defendant's principal.

professional malpractice or negligence belonged to the claimant, as the injured party, rather than defendant. Accordingly, as defendant failed to allege any facts permitting an inference that it was an intended third-party beneficiary or otherwise entitled to recovery on its counterclaims, they were properly dismissed (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 181-182 [2011]; *IMS Engrs.-Architects, P.C. v State of New York*, 51 AD3d at 1357-1358; *compare Saratoga Schenectady Gastroenterology Assoc., P.C. v Bette & Cring, LLC*, 83 AD3d 1256, 1257-1258 [2011]).[2]

Defendant next contends that Supreme Court erred in granting summary judgment to plaintiff. We disagree. The court concluded that an oral contract existed between plaintiff and defendant, and that plaintiff was entitled to recovery on the basis of an account stated, that is, " 'an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due' " (*J.B.H., Inc. v Godinez*, 34 AD3d 873, 874 [2006], quoting *Jim-Mar Corp. v Aquatic Constr.*, 195 AD2d 868, 869 [1993], *lv denied* 82 NY2d 660 [1993]). An account stated may be "implied from the retention of an account rendered for an unreasonable period of time without objection and from the surrounding circumstances" (*Jim-Mar Corp. v Aquatic Constr.*, 195 AD2d at 869). When no timely objection is raised after an account is presented, "silence is deemed acquiescence and warrants enforcement of the implied agreement to pay" (*J.B.H., Inc. v Godinez*, 34 AD3d at 875 [internal quotation marks, brackets and citations omitted]).

Here, plaintiff demonstrated that after he was retained by defendant, he submitted periodic bills to defendant, upon which defendant made payments without objection until shortly after the trial. Thereafter, plaintiff alleged that he sent detailed invoices to defendant in December 2007, April 2008, June 2008 and October 2008, to which defendant made no response of any kind until November 2008. Plaintiff supplied copies of these invoices as well as documents and correspondence showing that for several months after defendant's last payment, it continued to request plaintiff's services without expressing dissatisfaction or indicating that it did not intend to pay for them. Plaintiff

---

2. Defendant's contention that this determination unfairly deprives it of potential claims or defenses based on plaintiff's alleged malfeasance lacks merit; third-party beneficiary status was not required to enforce any contractual obligations existing directly between plaintiff and defendant (*compare Lake Placid Club Attached Lodges v Elizabethtown Bldrs.*, 131 AD2d 159, 162 [1987]).

further alleged that he made numerous telephone and e-mail inquiries about the lack of payment but received no response other than, on one occasion in April 2008, a promise from defendant's associate to forward the inquiry to defendant's principal. These submissions satisfied plaintiff's prima facie burden to show that accounts were submitted and retained without objection, thus shifting the burden to defendant to demonstrate the existence of triable issues of fact (*see J.B.H., Inc. v Godinez*, 34 AD3d at 875; *Wit's End Giftique v Ianniello*, 277 AD2d 684, 686 [2000]).

In response, "[d]efendant failed to rebut the inference that it agreed to the account by tendering evidentiary proof of circumstances tending to show a contrary inference" (*Jim-Mar Corp. v Aquatic Constr.*, 195 AD2d at 870). Defendant's principal, Urs Broderick Furrer, alleged by affidavit that he did not recall receiving any invoices from plaintiff before October 2008. This allegation did not directly refute plaintiff's claim that previous invoices had been rendered—and Furrer also acknowledged that his files contained an invoice bearing a fax header revealing that it was transmitted in June 2008. Even if this invoice was the only one that defendant received before October 2008, Furrer did not claim that the charges reflected therein were substantially inconsistent with defendant's knowledge of the services that plaintiff had rendered or the rates established by the parties' prior course of dealing. As to his objections to certain charges, date errors, and other inconsistencies, none of these were made until after this action was commenced in 2009. By its own admission, defendant received an invoice from plaintiff in October 2008 containing all of the itemized charges to which it now objects. Nonetheless, defendant's letter to plaintiff's counsel more than a month later contained no specific objections to the charges other than a generalized claim that they were "exorbitant" and that defendant did not consent to their accuracy. Such claims do not constitute the requisite "specific, as opposed to general, allegations of protest" (*1000 N. of N.Y. Co. v Great Neck Med. Assoc.*, 7 AD3d 592, 593 [2004]).[3]

Defendant's objections were not primarily grounded in the particulars of the invoices; instead, the central contention is that the failure to pay for plaintiff's services was justified by his

---

3. Even had defendant's objections to specific charges been timely raised, they fail to withstand close inspection. For example, defendant now complains that plaintiff's invoices include charges for services rendered before the claimant's case was transferred to defendant, but the record reveals that these charges were included in prior invoices, were paid without objection, and are not included in the outstanding balance for which plaintiff now seeks payment.

alleged malfeasance. However, this claim was not supported by an expert affidavit opining that plaintiff's services "deviated from accepted industry standards" and that this failure proximately caused the loss of the claimant's case (*Columbus v Smith & Mahoney*, 259 AD2d 857, 858 [1999]; *see Travelers Indem. Co. v Zeff Design*, 60 AD3d 453, 455 [2009]). Contrary to defendant's claim, the decision of the Court of Claims does not replace such an expert opinion. Although that court criticized some of plaintiff's methods, it made no finding as to his competence beyond the requisite assessment of the credibility of the conflicting expert opinions. The mere fact that the Court of Claims found plaintiff's opinions less credible than those of the opposing experts is insufficient to present a factual issue as to whether his performance was substandard; such determinations are necessarily made whenever the opinions of experts are in conflict. Further, the court explicitly stated that its determination was not based solely on credibility, but also on its factual conclusion that the subject accident was proximately caused by driver error, and not by a highway defect. Finally, defendant makes no claim that it communicated its objection on this ground to plaintiff until November 2008, more than a year after the allegedly deficient trial testimony, six months after the Court of Claims rendered its determination, and five months after the June 2008 invoice. As defendant's belated objections were not raised within a reasonable time and "fall[ ] far short of raising a question of fact as to the existence of an account stated," we agree with Supreme Court that plaintiff is entitled to summary judgment (*J.B.H., Inc. v Godinez*, 34 AD3d at 875; *see Wit's End Giftique v Ianniello*, 277 AD2d at 686; *John T. Percy & Assoc. v Collura*, 239 AD2d 650, 651 [1997]; *Marino v Watkins*, 112 AD2d 511, 512-513 [1985]).

Peters, J.P., Lahtinen, Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, with costs.